# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CP-00433-COA

**TODD MICHAEL CLAVERIE A/K/A TODD M. CLAVERIE A/K/A TODD CLAVERIE**     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**     **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/06/2017 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | TODD MICHAEL CLAVERIE (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 03/13/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.

### CARLTON, J., FOR THE COURT:

¶1. Todd Michael Claverie appeals the Harrison County Circuit Court's denial of his motion for post-conviction relief (PCR), seeking to have his post-release supervision (PRS) reinstated based upon his "full acquittal" of a sexual-battery charge brought against him while he was on PRS. Claverie asserts, pro se, that: (1) his PRS should be reinstated because he was acquitted of the sexual-battery felony that served, in part, as the basis for his PRS revocation; and (2) even if he had violated other conditions of his PRS, the circuit court exceeded its authority under Mississippi Code Annotated section 47-7-37(5) (Rev. 2015) when it imposed the full remainder of the suspended portion of his sentence at the revocation

hearing. Finding no error in the circuit court's denial of Claverie's PCR motion, we affirm. The record reflects sufficient evidence supporting the circuit court's authority to impose the remainder of Claverie's sentence under section 47-7-37.1 (Rev. 2015) and under 47-7-37(5)(b) for the commission of multiple technical violations.

## STATEMENT OF FACTS

¶2. In December 2012, Claverie was indicted for possession of marijuana with the intent to transfer or distribute. On September 3, 2013, he pled guilty to that charge and was sentenced to fifteen years in the custody of the Mississippi Department of Corrections (MDOC), suspended for time served, with three years' PRS pursuant to Mississippi Code Annotated section 47-7-34 (Rev. 2015). The order entered on September 3 set out specific terms and conditions of Claverie's PRS, including the condition that Claverie commit no offense against the laws of Mississippi or any other state or the United States.

¶3. Claverie was arrested and charged with sexual battery in January 2015. The State filed a petition to revoke his PRS on February 13, 2015, with an amended petition filed on February 23. In its revocation petition, the State itemized four PRS violations as follows:

Condition a: (Commit no offense against the laws of this state or any state of the United States). Offender was arrested by the Jackson County Sheriff's Department and charged with one count of sexual battery.

Condition d: (Report to supervising officer as directed). Offender missed reporting dates in the months of October, November, [and] December 2014 and January 2015.

Condition k: (Supervision Fees) Offender [is] in arrears of $160, offender missed payments for November, December 2014 & February 2015, but last

2

payment was 1/7/15 for $60.

Conditions n & o: (Court Fines & Payments). Offender has a balance of $407.50; last payment was on 2-11-14 for $2[,]000.

Claverie waived his right to a preliminary PRS revocation hearing, and on April 20, 2015, a revocation hearing was conducted before the circuit court. Claverie was represented by counsel.

¶4. At the hearing, the circuit court first questioned Claverie on whether he admitted or denied the violations itemized in the State's revocation petition. Claverie, through counsel, admitted to being arrested for sexual battery as to condition (a). Claverie denied condition (d) (failing to report in October, November, and December 2014 and January 2015) because he claimed he was put on quarterly reporting. As for condition (k), failing to pay the $55 monthly supervision fee, the circuit court noted at the hearing that "[i]f you absconded, you're not paying [and] they're saying you owe some money to the probation field office." Continuing, the circuit court said that because Claverie denied he had failed to report, the court likewise took that to mean that Claverie also denied failing to pay his supervision fees. Claverie affirmed that interpretation, and thus denied that he violated condition (k). Claverie also denied any failure to pay court fines and costs (conditions (n) and (o)), but testified that he had a remaining balance of $400 of a $2,400 fine.

¶5. The State then presented its case, first addressing Claverie's sexual-battery charge in violation of condition (a) of the PRS order. The State called Sergeant Kristin McElwain, a detective with the Jackson County Sheriff's Department who, at the time, was investigating

3

Claverie's sexual-battery charge against the victim, H.T.[1] She testified that her investigation began based on a report from school officials that H.T. had reported to her principal that she was being sexually assaulted by her stepfather, Claverie. The detective interviewed H.T., who told her that she was being sexually assaulted by Claverie beginning at the age of twelve, continuing until his arrest four years later, and including penetration beginning at age fourteen by penis and fingers along with fellatio and oral sexual battery. Additionally, the detective testified that she had spoken with eight witnesses who corroborated H.T.'s story, and she also had corroborating physical evidence. Sergeant McElwain also testified that she had interviewed another alleged victim, a former neighbor, who was present during the sexual assault at issue here. She then advised the circuit court that, at the time of the hearing, Claverie's case had been bound over to the Jackson County grand jury.

¶6. The State also addressed Claverie's denial of condition (d), that he missed reporting dates in October, November, and December 2014 and January 2015. Officer Rashad Conerly, with MDOC, testified that from his review of MDOC records he saw no evidence that Claverie had reported in any of the months at issue, nor was he informed that Claverie had been placed on quarterly probation. Additionally, Officer Conerly testified that even if Claverie had been reporting on a quarterly basis, Claverie would have been required to report during the four-month period from October 2014 to January 2015. If Claverie had reported, it would have been noted in MDOC's system, and there was no evidence that he had done

---

[1] We substitute initials for the minor victim's name.

so.

¶7.     The State did not put on evidence relating to conditions (k), (n), or (o) at the revocation hearing, stating that Claverie had admitted to violating these "failure to pay" conditions.  At the close of the State's case, Claverie offered no witnesses.  He also offered no testimony or proof that he had paid the $55 monthly supervision fee to MDOC for the months of November and December 2014 and February 2015, as required under condition (k); nor did he offer any evidence to rebut the information in the State's February 23, 2015 revocation petition that Claverie had violated conditions (n) and (o) because he had not made the required $50 monthly payments on the court costs and fines that he owed since February 11, 2014.

¶8.     The circuit court then called Claverie to the bench and explained that based on the evidence it heard relating to condition (a) (Claverie's sexual-battery charge) and the testimony regarding Claverie's failure to report as required under condition (d), there was a sufficient basis, by a preponderance of the evidence, to revoke Claverie's PRS.  The circuit court imposed the original fifteen-year sentence, with credit for all time served, and entered its revocation order on April 22, 2015.

¶9.     On October 7, 2015, the Jackson County grand jury returned a ten-count indictment setting forth the sexual battery and related charges against Claverie, including:  five counts of sexual battery; two counts of touching a child with lustful purposes; two counts of tampering with a witness (charging that Claverie attempted to induce H.T.'s two half-sisters

to falsely testify that H.T. said she lied about Claverie's actions against her); and one count of intimidating a witness (charging that Claverie sent intimidating and threatening messages to H.T.).

¶10. On August 5, 2016, a jury found Claverie guilty of three felonies—two counts of tampering with a witness and one count of intimidating a witness, H.T. The State nol prossed one count of sexual battery against Claverie, and the jury acquitted Claverie of the other sexual-battery/lustful-touching charges. Claverie was sentenced to seven years in MDOC custody. The sentencing order was entered on September 15, 2016.

¶11. On January 11, 2017, Claverie filed a five-sentence pleading styled "Brief of the Appellant," requesting "post-conviction relief" based only upon his "full acquittal [of] the false allegations made against him" regarding the sexual-battery charge. Claverie attached to his PCR motion the following exhibits: (A) the entry of the nolle prosequi as to Count IV only (the sexual-battery charge that he penetrated H.T.'s vagina with his tongue) and the jury verdict from the trial on the sexual-battery and related charges; and (B) the transcript of the April 20, 2015 revocation hearing. Claverie's PCR motion was unsworn.

¶12. By order of the circuit court, the State filed a response to Claverie's PCR motion and attached to that response the following exhibits: (A) the ten-count indictment returned on October 7, 2015, delineating the sexual-battery and other related charges against Claverie; and (B) the sentencing order entered September 15, 2016, following Claverie's sexual-battery trial, together with the entry of nolle prosequi as to Count IV only.

6

¶13.   On March 6, 2017, the circuit court entered a detailed order denying Claverie's PCR motion. The circuit court judge that conducted Claverie's revocation hearing was the same judge that ruled on Claverie's PCR motion, and he specifically noted in his order that he had conducted a full evidentiary hearing on April 20, 2015, on Claverie's alleged PRS violations. In its order denying Claverie's PCR motion, the circuit court summarized Sergeant McElwain's testimony at the revocation hearing regarding her investigation of the sexual-battery charge against Claverie;[2] and the circuit court also noted the testimony of the MDOC officer "who testified that Claverie missed his required reporting dates in the months of October, November, [and] December of 2014 and January of 2015."

¶14.   Regarding Claverie's subsequent acquittal on the sexual-battery charge, the circuit court observed that although a jury acquitted Claverie on this charge, which "served, in part, as the basis of the Amended Petition for Revocation[,] Claverie was, however, convicted of other felony charges that post-dated his revocation hearing but stemmed from the sexual[-] battery charge at issue here."

¶15.   Based upon "a thorough review of the record in this case," the circuit court denied Claverie's PCR motion, noting that "[a]lthough Claverie was subsequently acquitted of the felony charge that served, in part, as the basis of the Amended Petition, the State offered sufficient proof at the revocation hearing that Claverie violated the terms and conditions of

---

[2] To avoid repetition, we do not include the details of that summary here, but rather discuss the circuit court's order denying Claverie's PCR motion in further detail below.

his [PRS] as outlined in the Amended Petition, which included violations other than the felony charge." The circuit court cited legal authorities supporting its decision, observing that "[e]vidence for revocation of probation does not have to be beyond a reasonable doubt. *Ray v. State*, 229 So. 2d 579[, 581] (Miss. 1969); *Morgan v. State*, 995 So. 2d 787[, 790 (¶9)] (Miss. Ct. App. 2008)." Continuing, the circuit court held that "[b]ecause of this lower evidentiary standard applicable in revocation hearings, Claverie's later acquittal at trial does not per se preclude his revocation stemming from the acts constituting the same crimes. *Elkins v. State*, 116 So. 3d [185, 188 (¶12)] (Miss. Ct. App. 2013); *see also Moore v. Ruth*, 556 So. 2d [1059, 1061-62 (Miss. 1990)]."

¶16. Claverie appealed pro se on March 23, 2017. He argues on appeal that: (1) his PRS should be reinstated because he was acquitted of the sexual-battery felony that served, in part, as the basis for the State's revocation petition; and (2) even if he had violated other conditions of his PRS, the circuit court exceeded its authority under section 47-7-37(5) when it imposed the full remainder of the suspended portion of his sentence at the revocation hearing.

## STANDARD OF REVIEW

¶17. "A circuit court's denial of post-conviction relief will not be reversed absent a finding that the court's decision was clearly erroneous." *Elkins v. State*, 188 So. 3d 613, 615 (¶7) (Miss. Ct. App. 2016). "But when issues of law are raised, the proper standard of review is de novo. *Id*.

8

## DISCUSSION

### I.      Unsworn PCR Motion

¶18.    In its appellee's brief, the State asserts that Claverie's PCR motion was properly denied because his motion was unsworn, in violation of several requirements under Mississippi Code Annotated section 99-39-9(1) and (3) (Rev. 2015). Specifically, Claverie's PCR motion did not have "[a] separate statement of the specific facts which are within the personal knowledge of the petitioner and which shall be sworn to by the petitioner" (*see* § 99-39-9(1)(d)), nor was the motion "verified by the oath of the petitioner" (*see* Miss. Code Ann. § 99-39-9(3) (Rev. 2015)).

¶19.    In reply, Claverie acknowledged that his motion was unsworn and attached a sworn version of his PCR motion to his appellant's reply brief.  Claverie also noted in his reply that the circuit court did not deny his PCR motion on this basis.  He further asserts that the circuit court was obligated to inform him of the deficiencies in his motion to allow him to fix it and proceed with his motion.

¶20.    The State cites *Hooghe v. State*, 187 So. 3d 682 (Miss. Ct. App. 2016), in support of its argument that dismissal is appropriate here.  There the movant filed an unsworn PCR motion, and the circuit court dismissed it pursuant to Mississippi Code Annotated section 99-39-11(2) (Rev. 2015) because "it plainly appear[ed] that [Hooghe was] not entitled to any relief[.]"  *Hooghe*, 187 So. 3d at 682-83 (¶3).  We affirmed, without prejudice, "so that Hooghe [could] refile a procedurally proper PCR motion with the circuit court within the

9

applicable statute of limitations." *Id.* at 682 (¶1). In so holding, we observed that "[a]lthough this Court has often acknowledged that meritorious claims of pro se petitioners will not be avoided based on inartfully drafted pleadings, we have instructed that petitioners, even if proceeding pro se, must comply with the dictates of section 99-39-9(1)(d)-(e)." *Hooghe*, 187 So. 3d at 683 (¶5). In this case, we need not reach this issue because we find no error in the circuit court's denial of Claverie's PCR motion without an evidentiary hearing.

## II.     Assertions in Claverie's PCR Motion

¶21.     Claverie requested post-conviction relief in the circuit court based only upon his "full acquittal [of] the false allegations made against him" regarding the sexual-battery charge. He makes the same argument on appeal, asserting that his PRS should be reinstated because he was acquitted of the sexual-battery felony that served, in part, as the basis for the circuit court's revocation order. We disagree, and for all the reasons below affirm the circuit court's denial of Claverie's PCR motion.

### a.     Evidentiary Hearing

¶22.     Finding that Claverie failed to show he was entitled to any relief, the circuit court summarily denied his PCR motion without an evidentiary hearing.[3] This Court recognizes

---

[3] Mississippi Code Annotated section 99-39-11(2) (Rev. 2015) allows that "[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the petitioner to be notified."

that a "circuit court may dismiss a PCR motion without an evidentiary hearing where it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief." *Lott v. State*, 217 So. 3d 791, 793 (¶7) (Miss. Ct. App. 2017) (quoting *Pickle v. State*, 115 So. 3d 896, 899 (¶12) (Miss. Ct. App. 2013)); *see also* Miss. Code Ann. § 99-39-11(2) (Rev. 2015).

¶23. In the light of the circuit court's detailed order denying Claverie's PCR motion, the extensive record reviewed by the circuit court, and the fact that the same circuit court judge who denied Claverie's PCR motion also conducted Claverie's revocation hearing, we find no error in the circuit court's decision to rule upon Claverie's PCR motion without an evidentiary hearing.

¶24. As addressed above, Claverie's PCR motion included the following exhibits in support of his argument that he had been acquitted on the sexual-battery charge that was one basis for his PRS revocation: (A) the entry of the nolle prosequi as to Count IV only (one of the five sexual-battery charges) and the jury verdict acquitting Claverie on the other sexual-battery/lustful-touching charges; and (B) the transcript of the April 20, 2015 revocation hearing.

¶25. Upon review of Claverie's PCR motion, the circuit court took the further precaution of ordering the State to file a response to Claverie's PCR motion. *See* Miss. Code Ann. § 99-39-11(3). The State promptly complied. The State's response included these additional exhibits to complete the picture of what occurred after Claverie's revocation hearing: (A)

the ten-count indictment returned on October 7, 2015, which included, in addition to the sexual-battery and lustful-touching counts, two counts of tampering with a witness and one count of intimidating a witness; and (B) the sentencing order entered September 15, 2016, showing that Claverie was found guilty and sentenced to seven years in the custody of MDOC on the three related felonies of tampering with a witness and intimidating a witness, H.T.

¶26.    The circuit court's detailed order demonstrates its careful review of the record before it.  Further, as we discuss below, we find that the circuit court's denial of Claverie's PCR motion is consistent with and supported by the evidence and testimony presented in the record.  Accordingly, any challenge seeking to reverse the circuit court's decision based on the lack of an evidentiary hearing on Claverie's PCR motion is without merit.  *See Hunt v. State*, 874 So. 2d 448, 452 (¶¶12-14) (Miss. Ct. App. 2004).[4]

### b.    Evidence Presented at the Revocation Hearing

---

[4] In contrast, we have remanded cases for an evidentiary hearing on a movant's PCR motion challenging the validity of his revocation hearing where we had no record of the evidence the circuit court relied upon in summarily denying the movant's PCR motion.  *See*, *e.g.*, *Lott v. State*, 217 So. 3d 791, 793 (¶10) (Miss. Ct. App. 2017); *Randle v. State*, 177 So. 3d 1164, 1166 (¶7) (Miss. Ct. App. 2015) (finding that an evidentiary hearing was required where there was no record providing information relied upon to revoke the PCR movant's parole and the circuit court made no findings whether the PCR movant received the appropriate due process at the revocation hearing); *Elkins*, 116 So. 3d at 189 (¶¶14-15) (holding movant was entitled to an evidentiary hearing where the circuit court did not have the transcript of the PCR movant's revocation hearing and was provided no other documentary evidence it may have relied upon in denying the movant's PCR motion).  As we discuss above, this is not the case here.

¶27. This Court has consistently held "that the amount of evidence presented at a revocation hearing must be enough to show that the defendant more likely than not violated probation." *Jackson v. State*, 157 So. 3d 105, 107-08 (¶13) (Miss. Ct. App. 2015) (quoting *Younger v. State*, 749 So. 2d 219, 222 (¶13) (Miss. Ct. App. 1999)) (internal quotation marks omitted). Regarding Claverie's acquittal on the sexual-battery charges, in particular, "a conviction is not necessary to revoke probation." *Fairley v. State*, 138 So. 3d 280, 282 (¶4) (Miss. Ct. App. 2014). As we recognized in *Elkins*, "even when a parolee is acquitted in a criminal proceeding, this 'does not per se preclude parole revocation predicated upon facts and circumstances giving rise to the criminal charge.'" *Elkins*, 188 So. 3d at 615 (¶8) (quoting *Williams v. Castilla*, 585 So. 2d 761, 764 (Miss. 1991)). We find that the circuit court did not err in denying Claverie's PCR motion and determining that sufficient information was before it to support the revocation of Claverie's suspended sentence.

### i. *Violation of condition (a)—Claverie's sexual-battery charge*

¶28. Claverie asserts that his post-revocation acquittal of all sexual-battery-related charges is a "new fact" that justifies vacating his PRS revocation. We disagree. There is ample evidence in the record to support the circuit court's determination that Claverie more likely than not violated condition (a) of his PRS order, which required that he not commit any offense against state or federal law.

¶29. In its order denying post-conviction relief, the circuit court detailed Sergeant McElwain's testimony at the revocation hearing regarding her investigation of the sexual-

13

battery charge against Claverie as follows:

> At the [revocation] hearing, [this] [c]ourt heard testimony from a detective with the Jackson County Sheriff's Department who, at the time, was investigating Claverie's sexual[-]battery charge. The detective testified that the alleged victim had informed her that she was being sexually assaulted by Claverie, her stepfather, and that the abuse began at the age of twelve, continued until his arrest four years later, and included penetration beginning at age fourteen by penis and fingers along with fellatio and oral sexual battery. The detective further testified that she had since spoken with eight witnesses [who] corroborated the alleged victim's story, as did the physical evidence in the case. The detective also testified that she had interviewed another alleged victim, a former neighbor, who was present during the sexual assault at issue here. The detective advised the [c]ourt that, at the time of the hearing, Claverie's case had been bound over to the Jackson County grand jury.

¶30. The circuit court also reviewed post-revocation evidence that further supports its determination that Claverie had violated the terms and conditions of his PRS, including condition (a). The record contains Claverie's subsequent ten-count indictment, which included five counts of sexual battery and two counts of touching a child with lustful purposes. "An indictment is a determination by a grand jury that probable cause exists to hold the person indicted for trial." *Bodne v. King*, 835 So. 2d 52, 59 (¶25) (Miss. 2003) (citing *Stevenson v. State*, 244 So. 2d 30, 33 (Miss. 1971)). The ten-count indictment, the evidence provided by Sergeant McElwain at the revocation hearing, and the subsequent related felony convictions further support the circuit court's determination that Claverie more likely than not violated condition (a) of his PRS order.

¶31. As the circuit court observed in its order denying Claverie's PCR motion, although a jury acquitted Claverie on the sexual-battery/lustful-touching charges, "Claverie was,

14

however, convicted of other felony charges that post-dated his revocation hearing but stemmed from the sexual[-]battery charge at issue here." As described above, Claverie was convicted of two counts of witness tampering and one count of intimidating a witness. These felony convictions arose out of the same facts and circumstances as Claverie's sexual battery against H.T.; directly relate to that charge; and further demonstrate that reasonable relaxed grounds outside of Claverie's sexual-battery charge exist to support revoking his PRS. *See Elkins*, 188 So. 3d at 615-16 (¶¶8, 13).

### ii. Violation of condition (d)—failure to report to field probation officer in October, November, and December 2014 and January 2015

¶32. There likewise was sufficient evidence in the record before the circuit court to show that Claverie more likely than not violated condition (d) of the PRS order, which required that he report to his supervising officer as directed. As the circuit court stated in its order denying Claverie's PCR motion, the court had heard from an MDOC officer at the revocation hearing "who testified that Claverie missed his required reporting dates in the months of October, November, [and] December of 2014 and January of 2015." Claverie claims he was put on quarterly reporting during this time period, but as noted above, MDOC Officer Conerly testified that he was never informed that Claverie had been placed on quarterly probation. Additionally, even if Claverie had been reporting on a quarterly basis, Officer Conerly testified that Claverie would have been required to report during the four-month period from October 2014 to January 2015. There was no record that he did.

15

### iii. *Violation of condition (k)—failure to pay $55 per month supervision fees for November and December 2014 and February 2015*

¶33. The record reflects that Claverie did not address condition (k) (requiring payment of a $55 monthly supervision fee) in his PCR motion, and on appeal merely asserts that he "was able to make [his supervision-fee] payment for the month of January [2015]." This information, however, is not helpful to Claverie because the violation he is cited for results from his failure to pay his monthly supervision fee for the months of November and December 2014 and February 2015. Claverie does not assert that he made *these* payments, and therefore he has waived any argument that he did not violate condition (k). *In re B.A.H.*, 225 So. 3d 1220, 1239 (¶62) (Miss. Ct. App. 2016) (citing *Sanders v. State*, 678 So. 2d 663, 670 (Miss. 1996)).

¶34. We also find that there was sufficient evidence before the circuit court to find Claverie violated this condition of his PRS order. We acknowledge that at the revocation hearing Claverie denied violating condition (k), but this was in the context of his denial of his failure to report to his supervising officer under condition (d). As addressed above, the circuit court ultimately found that Claverie failed to meet his reporting requirements under condition (d). As the circuit court explained to Claverie at the revocation hearing, condition (k) "corresponds with condition [(d)]. If you absconded, you're not paying." Claverie did not testify or offer any evidence at the hearing that he had made the November and December 2014 and February 2015 supervision-fee payments at issue. We find that the circumstances

16

described above, taken together, are sufficient to find that Claverie more likely than not violated condition (k) of the PRS order.

### iv. *Violation of conditions (n) and (o)—failure to pay fines and court costs*

¶35. We also find that there was sufficient evidence in the record that Claverie more likely than not violated conditions (n) and (o) of the PRS order, which assessed fines and court costs against him for $2,400 and required that he pay $50 per month, beginning October 4, 2013, until all amounts were paid in full. Claverie testified at the April 20, 2015 revocation hearing that he "had a balance of $400 of a $2[,]400 fine," and he raises that same point in his appellant's brief. In the State's February 23, 2015 revocation petition, the State claimed that Claverie owed $407.50 and that his last payment had been on February 11, 2014. In short, the court costs and fines Claverie owed had not been paid in full, and Claverie had not made his monthly $50 payment for twelve months, in violation of conditions (n) and (o) of the PRS order.

### III. Imposition of the Remainder of Claverie's Sentence

¶36. Claverie argues, in the alternative, that his acquittal on the sexual-battery-related charges means he did not violate condition (a) of the PRS order, and, from this, he argues that even if he had violated condition (d) and the payment conditions of that order, the circuit court exceeded its authority under section 47-7-37(5)(b) by reimposing the full remainder of the suspended portion of his sentence when it revoked his PRS.

¶37. We reject this argument on both procedural grounds and on the merits. First, Claverie

17

did not raise this argument in his PCR motion, and has therefore waived it: "A petitioner who fails to raise an issue in his PCR motion may not raise that issue for the first time on appeal." *Bass v. State*, 174 So. 3d 883, 885-86 (¶7) (Miss. Ct. App. 2015) (quoting *Fluker v. State*, 17 So. 3d 181, 183 (¶5) (Miss. Ct. App. 2009)) (internal quotation marks omitted); *see Graham v. State*, 204 So. 3d 329, 334 (¶14) (Miss. Ct. App. 2016) ("Generally, a trial judge will not be found in error on a matter not presented to him for decision.").

¶38.    Second, we find Claverie's argument lacks merit because, as set forth above, there is sufficient record evidence to support the circuit court's determination that Claverie more likely than not violated condition (a) of his PRS order, which required that he not commit any state or federal offense.   Accordingly, the circuit court was authorized to impose the remaining portion of Claverie's suspended sentence. *See* Miss. Code Ann. § 47-7-37.1 ("[I]f a court finds by a preponderance of the evidence[] that . . . a person under post-release supervision has committed a felony or absconded, the court may revoke his probation and impose any or all of the sentence.").[5]

¶39.    Third, as likewise addressed above, we also find that Claverie violated the other three conditions of his PRS order, namely:  condition (d) (failure to report to his supervising officer); condition (k) (failure to pay his monthly $55 supervision fee); and conditions (n) and (o) (failure to pay his monthly $50 payments on the court costs and fines assessed against

---

[5] The circuit court's revocation order was entered April 22, 2015, two days after the effective date of the passage of this statutory provision.

18

him).  Accordingly, the circuit court was authorized to impose the remaining portion of Claverie's suspended sentence under section 47-7-37(5)(b).  This statute delineates a court's authority when revoking probation for a "technical violation" and provides, in relevant part:

> If the court revokes probation for a technical violation, the court shall impose a period of imprisonment to be served in either a technical violation center or a restitution center not to exceed ninety (90) days for the first technical violation and not to exceed one[-]hundred[-]twenty (120) days for the second technical violation. *For the third technical violation*, the court may impose a period of imprisonment to be served in either a technical violation center or a restitution center for up to one[-]hundred[-]eighty (180) days *or the court may impose the remainder of the suspended portion of the sentence*. For the fourth and any subsequent technical violation, the court may impose up to the remainder of the suspended portion of the sentence.

*Id.* (emphasis added).  A "[t]echnical violation" is defined as "an act or omission by the probationer that violates a condition or conditions of probation placed on the probationer by the court or the probation officer."  Miss. Code Ann. § 47-7-2(q) (Rev. 2015).

¶40.    As the Mississippi Supreme Court has recently held, the proper interpretation of a "technical violation" in the context of section 47-7-37(5) "requires a finding of each separate violation of parole to be a separate and distinct technical violation." *Walker v. State*, 230 So. 3d 703, 705-06 (¶¶10-13) (Miss. 2017) (addressing the same language in section 47-7-37(5)(a)).  Accordingly, under the plain language of the statute, because Claverie violated three other conditions of his PRS (in addition to condition (a)), he committed three "technical violations," and thus the circuit court was within its authority to impose the remainder of the

19

suspended portion of Claverie's sentence under section 47-7-37(5)(b).[6] *See Walker*, 230 So. 3d at 704-06 (¶¶3, 10-13) (affirming the circuit court's reinstatement of a defendant's sentence based on three violations of the defendant's conditions of parole); *Cobbert v. State*, 223 So. 3d 822, 825 (¶¶6-7, 10) (Miss. Ct. App. 2017) (interpreting sections 47-7-37(5)(a) and 47-7-2(q) and holding that the plain language of the statute requires that each violation of a condition of parole is a "technical violation").

¶41.    **AFFIRMED.**

    **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE AND TINDELL, JJ., CONCUR.  WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

---

[6] As noted above, section 47-7-37(5)(b) provides, in relevant part, that "[*f*]*or the third technical violation*, the court may impose a period of imprisonment to be served in either a technical violation center or a restitution center for up to one[-]hundred[-]eighty (180) days *or the court may impose the remainder of the suspended portion of the sentence*." (Emphasis added).